STATE OF CONNECTICUT *v.* MICHAEL LaCASSE

(3496)

HULL, SPALLONE and BIELUCH, Js.

Argued September 16—decision released October 14, 1986

*John W. Watson,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Mary H. Lesser,* special assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Julia DiCocco Dewey* and *Michael Dearington,* assistant state's attorneys, for the appellee (state).

SPALLONE, J. The defendant is appealing from the judgment rendered following his conviction, after a trial to a jury, of the crimes of burglary in the first degree, in violation of General Statutes § 53a-101 (a) (1), robbery in the first degree, in violation of General Statutes § 53a-134 (a) (2), unlawful restraint in the first degree, in violation of General Statutes § 53a-95 (a), and, assault in the first degree, in violation of General Statutes § 53a-59 (a) (3). The defendant claims that the trial court committed error (1) in admitting a voice identification, and (2) in unfairly marshalling evidence in favor of the state. The defendant also claims he was denied effective assistance of counsel.

The jury could have reasonably found the following facts. On September 30, 1983, at about 8:30 p.m., the victim was in his home in Meriden. Also present at this time were his young son and his son's young friend, who were watching television. The victim's wife was not present in the house because she was out shopping. While in the upstairs hall, the victim noticed a shadowy figure in a room and, thinking it was his wife, he called out her name, "Eleanor." He was then confronted by an intruder whom the victim described as a white male in his late twenties to early thirties, about five feet six inches to five feet seven inches tall, 135 pounds, muscular, wearing a black ski mask and a blue shirt and holding a gun.

The victim took money from his wallet and handed it to the intruder who stated, "This isn't enough." At that time, the two young boys came upstairs, saw the intruder, grabbed the victim's legs and began to cry. The intruder said, "Take the boys in a room. Put the boys in a room." The boys said, "No, don't do that." The intruder repeated his directive, and the victim complied. Thereupon the intruder said, "Come into the living room." Thereafter, the intruder drew the drapes, and told the victim, "Go into the bedroom." The intruder asked, "Who's Eleanor," to which the victim responded that she was his wife who was out but who would be returning soon. The man then said, "I'm going to tie you up." While the victim was being tied with a rope, the gun being held by the intruder discharged, wounding the victim. The intruder at this point departed and the victim called the police. Help arrived and the victim was taken to the hospital where he underwent surgery and remained for several days.

In the course of their investigation, the police learned that a white van with blue letters had been seen parked near the victim's home on the night of the crime. On October 4, 1983, a Meriden police officer pulled over a van answering the description given to the officers. The defendant was the operator of the van which was registered to him under an expired registration. The defendant was given a summons and allowed to leave, but was requested to come to police headquarters that day. The van was then towed to the police department.

The defendant came to police headquarters that afternoon, was given oral *Miranda* warnings and signed a "Voluntary Interview Form" in which he acknowledged that he had been told and understood that he was not under arrest, that he agreed to the interview at the Meriden police department, and that he could stop the interview and leave at any time without restraint. He was questioned twice, the second interview being tape

recorded. He was cooperative with his questioners, and acknowledged being in the victim's neighborhood on the evening of the crime. He described his route, stops, and timetable, and accompanied the police officers over that route.

Later, while conducting a search of the route as given them by the defendant, the police found, alongside a portion of the route, a blue shirt, a brown knitted ski mask, a piece of rope, some fragments of a gun grip, and a black .25 caliber automatic pistol. The police also gathered hair samples from the defendant's dog and pet raccoons along with samples of the defendant's hair.

The defendant was subsequently arrested and elected to be tried to a jury. Prior to the trial, the court conducted a hearing upon the state's motion to introduce evidence at trial of a voice identification of the defendant by the victim. During the hearing, and later at the trial, the victim identified the voice on the tape as that of the defendant.

At the trial, the victim identified the clothing and the weapon found on the defendant's route as the clothing worn and the gun used during the commission of the crime. A ballistics expert testified that the bullet removed from the victim was fired from the gun found on the defendant's route. Another forensic expert testified that the hairs taken from the clothing found on the defendant's route were consistent with the hairs taken from the defendant and the defendant's dog and pet raccoons. The expert also confirmed that the rope used to bind the victim was similar to that found on the defendant's route. The defendant was convicted on all charges and this appeal followed.

We find the defendant's first claim, that the court erred in admitting the voice identification, to be without merit. The trial court applied the correct standard when it held that although the procedures utilized in

making the voice identification were unnecessarily suggestive,[1] such identification was nevertheless reliable under the totality of the circumstances. See *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Evans,* 200 Conn. 350, 354, 511 A.2d 1006 (1986); *State* v. *Hinton,* 196 Conn. 289, 292–93, 493 A.2d 837 (1985); *State* v. *Austin,* 195 Conn. 496, 499, 488 A.2d 1250 (1985); *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980). These cases hold that testimony regarding an identification obtained through an unnecessarily suggestive procedure is nevertheless admissible if the identification is found to be reliable based on the totality of the circumstances. *Manson* v. *Brathwaite,* supra, 114; *State* v. *Evans,* supra, 354. Although the above cited cases refer to visual identification procedures, our Supreme Court in *State* v. *Packard,* 184 Conn. 258, 261–67, 439 A.2d 983 (1981), held that the same tests used in visual identifications apply to voice identifications.

We must consider, therefore, whether, under the totality of the circumstances, the voice identification was reliable. The trial court, following the guidelines outlined *State* v. *Packard,* supra, 265–66, made the following findings: (a) the victim was certain that the voice on the tape was that of the defendant; (b) he was attentive to the assailant's voice and followed the verbal directions; (c) he was able to describe the defendant's voice; (d) he had ample opportunity to hear the defendant's voice, having been with him for at least ten minutes during which he heard the voice on at least six occasions; (e) he gave an accurate description not only of the defendant's voice, but also of other evidence

---

[1] The police provided the victim with a tape recording of their interview with the defendant, telling the victim that the recording was that of a suspect in the crime. Cf. *State* v. *Packard,* 184 Conn. 258, 265, 439 A.2d 983 (1981) (approving of an identification procedure where multiple voices speaking similar materials were presented to the victim, although finding elements of unnecessary suggestiveness in other aspects of the presentation).

found on the defendant's route; and (f) the time span between the confrontation and the identification, four days, was well within acceptable parameters. See *State* v. *Parker,* 197 Conn. 595, 500 A.2d 551 (1985) (ten months); *State* v. *McKnight,* 191 Conn. 564, 469 A.2d 397 (1983) (six days); *State* v. *Ledbetter,* 185 Conn. 607, 441 A.2d 595 (1981) (two weeks).

On the basis of the totality of the circumstances, we hold that the trial court's conclusion that the victim's voice identification of the defendant was sufficiently reliable to warrant its admission into evidence is fully substantiated by the facts and circumstances of this case. The trial court therefore committed no error by admitting the identification testimony. It was then, of course, for the jury, after cross-examination, to determine what weight to give such evidence. *State* v. *Perez,* 198 Conn. 68, 76, 502 A.2d 368 (1985).

The defendant next claims that the trial court's marshalling of the evidence in its charge to the jury was unfair and deprived the defendant of a fair trial. We disagree.

We begin our discussion of this claim by stating, parenthetically, that it is not surprising that the trial court devoted the bulk of its comments towards the evidence put forth by the state. Under our criminal justice system, the state, in order to obtain a conviction, must prove the defendant guilty of each and every element of the crime beyond a reasonable doubt. *State* v. *Dahlgren,* 200 Conn. 586, 605, 512 A.2d 47 (1986). On the other hand, the accused, in order to be acquitted, need in theory offer no proof and in practice will often confine his case to a particular element of the state's case. As a result, the state will often present the majority of evidence at trial, and the trial court, when commenting on the evidence, will more likely than not be called on to comment on evidence put forth by the state rather than by the defendant.

Here, the defendant complains that the court in its instructions to the jury did not present a balanced picture of the case. He alleges that the court discussed the prosecution's claims in far greater detail and at far greater length than the defendant's. This may be so in any given portion of any charge. The test is not what is gleaned from an individual section of a charge but whether the charge taken as a whole fairly presents the case to the jury. *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). Individual passages comprising the jury instructions must be construed in light of the charge as a whole. *State* v. *Dahlgren,* supra, 605; *State* v. *Williams,* 199 Conn. 30, 37, 505 A.2d 699 (1986). A trial court may comment on the weight of the evidence as long as it does not direct or advise the jury how to decide the matter. *State* v. *Mullings,* 166 Conn. 268, 274, 348 A.2d 645 (1974).

In *State* v. *Nims,* 8 Conn. App. 631, 641, 513 A.2d 1280 (1986), quoting *State* v. *Marx,* 78 Conn. 18, 28, 60 A. 690 (1905), we stated: " 'It is the duty of the trial judge, in submitting the law and the facts to the consideration of a jury, to refer to the testimony so far as may be necessary to assist the jury to a clear apprehension of the relation of the testimony, whose credibility they must determine, to the material facts they must decide . . . . It is evident that whenever this duty is well done, the charge must to some extent uncover the weakness of a weak case, the difficulties of a difficult case, or the strength of a strong case.' Furthermore, 'the fact that the claims or evidence of one party are stated at much greater length than those of the other does not by itself render the court's summary of the evidence in its charge unfair.' *Anderson & McPadden, Inc.* v. *Tunucci,* 167 Conn. 584, 592, 356 A.2d 873 (1975); see *Sturdevant's Appeal from Probate,* 71 Conn. 392, 396, 42 A. 70 (1899)."

A review of the complete charge in this case fails to reveal that the court deviated in any degree from the course of conduct chartered by the principles stated above. We, therefore, find no merit to the defendant's second claim of error.

Guided by the reasoning and holdings in *State* v. *Leecan,* 198 Conn. 517, 541–42, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986) and *State* v. *Aspinall,* 6 Conn. App. 546, 554–55, 506 A.2d 1063 (1986), we decline to review the defendant's third claim of error regarding his alleged deprivation of effective assistance of counsel. We leave him to pursue the appropriate remedy for relief as expounded upon in those cases.

There is no error.

In this opinion the other judges concurred.