STATE OF CONNECTICUT *v.* THOMAS MACKOR, JR.
(5129)

DUPONT, C. J., DALY and BIELUCH, Js.

Argued April 1—decision released June 23, 1987

*Frederick P. Devine, Jr.,* with whom, on the brief, was *Paul M. Pieszak,* for the appellant (defendant).

*Mitchell S. Brody,* deputy assistant state's attorney, with whom, on the brief, was *Thomas Gomberg,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from his conviction, after a jury trial, of sexual assault in the first degree, in violation of General Statutes § 53a-70. The defendant claims that the statute is vague and viola-

tive of due process. He also claims that the court erred in failing to charge the jury on all of the elements of the crime, in referring only to testimony introduced by the state during its charge to the jury, and in allowing the introduction of evidence of the presence of spermatozoa in a vaginal swab obtained from the victim.

The jury could reasonably have found the following facts. The victim, in the company of two of her friends, met the defendant in a diner in Southington near midnight on August 31, 1985. The two of them left in his car, followed by her two friends in another car, purportedly to travel to the defendant's condominium. The defendant drove his car in such a way as to prevent her friends from following. He proceeded to a wooded area and, once there, smoked some marihuana, which the victim declined to smoke. The victim also declined the defendant's invitation to go swimming, and then asked to be taken home. Instead, the defendant reclined her seat, began to kiss her and placed his hand on her crotch. She, however, removed his hand and pushed him away, began to cry and again asked to be taken home. The defendant then lay down on top of the victim and she asked him to get off, and again asked him to take her home. He attempted to remove her pants, but she pushed his hands away. He then pinned both of her hands to her chest with one of his own, removed her pants, and penetrated her vagina with his penis. The defendant then smoked some more marihuana, and dropped the victim off at the home of a friend of hers. She reported the incident to the police on September 1, 1985, and went to the hospital for an examination.

The first issue raised by the defendant is whether the statute under which the defendant was convicted is unconstitutionally vague as applied to the facts of this case.[1] General Statutes § 53a-70 (a) provides: "A per-

---

[1] Generally, the constitutionality of a statutory provision claimed to be void for vagueness is determined by its applicability to the particular facts

son is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

The defendant's claim rests upon his proposition that the statute does not require a causal connection between the use of force and the sexual intercourse. He claims that as the statute is written, the passage of time between the use of force and the intercourse, or ambiguous behavior of a victim, which might negate an earlier use of force, would nonetheless be proscribed. He makes no other argument as to the vagueness of the statute. His essential claim is that the statute does not clearly "delineate the line between acceptable and nonacceptable behavior."

In order to survive a constitutional attack on a statute claimed to be void for vagueness, the statutory language must give fair warning to [persons] of common intelligence of the behavior which is forbidden.[2] *State* v. *Pickering,* 180 Conn. 54, 60–61, 428 A.2d 322 (1980). "The test for vagueness is whether the statute gives 'adequate warning of what activities it proscribes.' *Broaderick* v. *Oklahoma,* 413 U.S. 601, 607, 93 S. Ct. 2908, 37 L. Ed. 2d 830 [1973]. '[L]aws [must] give the

in issue. The exception to this rule, which allows statutes implicating the freedom guaranteed by the first amendment to the United States constitution, to be challenged on their face, is not applicable to this case. See *State* v. *Madera,* 198 Conn. 92, 106, 503 A.2d 136 (1985); *State* v. *Pickering,* 180 Conn. 54, 57 n.3, 428 A.2d 322 (1980).

[2] In circumstances where first amendment rights are at stake, or where an initial determination is made that the statute does not provide fair warning, a second step may be necessary to determine whether adequate standards for its enforcement and administration exist, in comportment with the strong presumption of validity attaching to legislative acts. *State* v. *Pickering,* 180 Conn. 54, 61, n.4, 428 A.2d 322 (1980).

person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.' *Grayned* v. *City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 [1972]." *State* v. *Tedesco*, 175 Conn. 279, 288, 397 A.2d 1352 (1978).

The plain language of General Statutes § 53a-70 is sufficiently explicit to allow persons of ordinary intelligence to know what behavior is prohibited. The statute prohibits the use of force in order to compel another person to engage in sexual intercourse, or the threat of the use of force which reasonably causes fear of injury in order to compel another person to engage in sexual intercourse.

The "use of force" as defined in General Statutes § 53a-65 (7) is: "(A) Use of a dangerous instrument; or (B) use of actual physical force or violence or superior physical strength against the victim." The threat of the use of force, which the defendant does not argue has any technical meaning, is that which causes a person to fear the use of actual physical force or violence or the use of superior physical strength. "According to Webster, Third New Internatinal Dictionary, 'threat' means: '1: an indication of something pending and [usually] undesirable or unpleasant . . . a: an expression of an intention to inflict evil, injury, or damage on another [usually] as retribution or punishment for something done or left undone . . . b: expression of an intention to inflict loss or harm on another by illegal means and [especially] by means involving coercion or duress of the person threatened . . . .' " *State* v. *Newton,* 8 Conn. App. 528, 541, 513 A.2d 1261 (1986).

Sexual intercourse, as applicable to this case, means "[p]enetration, however slight . . . to complete vaginal intercourse . . . ." General Statutes § 53a-65 (2). To "compel," while not defined by the penal code, means according to Webster, Third New International

Dictionary: "3a: to domineer over so as to force compliance or submission . . . to employ force [especially] to exert an irresistible influence. . . ." The statute, by its plain language means, therefore, that the use of actual physical force, violence, or superior physical strength, or the threat of such force, violence or strength which reasonably causes fear of injury, in order to compel another to engage in sexual intercourse, with even the slightest degree of penetration, is proscribed.

In this case, if the jury credited the testimony of the victim, it could determine that the defendant did engage in the proscribed conduct of General Statutes § 53a-70 (a). There is no indication on the facts of this case that there was any spatial or temporal disjunction which might serve to truncate the causal connection between the use of force or the threat of the use of force from the sexual intercourse. The language of the statute was clear and is not unconstitutionally vague when applied to the facts of this case.

The next issue raised by the defendant is whether the judge erred by declining to charge the jury on consent or resistance. The defendant's claim is that force as a causal factor can only be found when the judge has charged and the jury has specifically considered whether the victim has consented, and whether the victim acted to resist the defendant. The defendant submitted requests to charge on consent and resistance, and when those were refused by the court, requested that the court formulate its own charge for the jury on those issues, which request was refused.

The charge must adequately instruct the jury on the law applicable to the case in order to assist them in their understanding of the nature of the charges against the defendant, and the factual elements which must be

proved in order to apply the law to the facts of the case. *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982).

In order for the court's refusal to charge on consent and resistance to be erroneous, the defendant must demonstrate that such instructions were elements of the crime with which the defendant was charged. The defendant asserts that a lack of consent and resistance are elements of the crime charged.

The state once had the burden of proving that the victim had earnestly resisted sexual intercourse. *State* v. *Mastropetre,* 175 Conn. 512, 523, 400 A.2d 276 (1978); *State* v. *Esposito,* 122 Conn. 604, 607, 191 A. 341 (1937); *State* v. *Long,* 72 Conn. 39, 44, 43 A. 493 (1899); *State* v. *Shields,* 45 Conn. 256 (1877); see General Statutes (Rev. to 1975) § 53a-72.[3] The defendant's argument on the necessity of an "earnest resistance" charge is predicated upon a determination that the legislature intended no change when it revised the statutory prohibitions against rape by Public Acts 1975, No. 75-619, now General Statutes § 53a-70. The revision altered the rape statute by deleting the element of "forcible compulsion," and its concomitant meaning of "physical force that overcomes earnest resistance." General Statutes (Rev. to 1975) § 53a-65 (8).[4] The statute no longer requires that the state prove that physical force overcame earnest resistance, which was used in the past as a prerequisite to proving noncon-

[3] General Statutes (Rev. to 1975) § 53a-72, provided: "(a) A male is guilty of rape in the first degree when he engages in sexual intercourse with a female: (1) By forcible compulsion; or (2) who is incapable of consent by reason of being physically helpless; or (3) who is less than fourteen years of age."

[4] General Statutes (Rev. to 1975) § 53a-65 provided in pertinent part: "(8) 'Forcible compulsion' means physical force that overcomes earnest resistance; or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person, or in fear that he or another person will immediately be kidnapped."

sensual carnal knowledge by force. *State* v. *Esposito,* supra, 607. Whereas forcible compulsion was once proved by demonstrating that force had overcome resistance, the state is now required to prove that it was the use of force or its threat which caused the victim to engage in sexual intercourse, and does not by its express language require that resistance be proven.

The defendant's argument is that the legislature *did not* intend to alter the essential elements of the crime, and that, therefore, a lack of consent to sexual intercourse and earnest resistance remain as elements of General Statutes § 53a-70 (a). The fact is that the legislation *did* change the wording of the statute, "and we may not presume that the legislature has enacted futile or meaningless legislation or that a change in the law was made without a reason." *City Council* v. *Hall,* 180 Conn. 243, 251, 429 A.2d 481 (1980). "We can assume that this change in the law was made to accomplish some purpose." *Brown* v. *Cato,* 147 Conn. 418, 162 A.2d 175 (1960).

The language of the prior statute regarding overcoming resistance was incorporated in it by the definition of forcible compulsion, which was "physical force that overcomes earnest resistance." General Statutes (Rev. to 1975) § 53a-65. That language was construed by the courts to require a charge on resistance because it was probative of the element of nonconsent. *State* v. *Esposito,* supra, 606–607; *State* v. *Shields,* supra, 264. The statute under which the defendant was convicted, however, makes no reference to overcoming resistance. The difference between the language used in the former and the present statutes evinces a legislative intent to overcome the construction given the earlier statute by previous cases in this jurisdiction. See *Brown* v. *Cato,* supra, 421. The elimination of the words "overcome earnest resistance" shows unmistakably that the legis-

lature intended to remove the onus of proving such resistance, and the corellative element of nonconsent, to the act of carnal knowledge by force.

Further evidence of this intent can be found in the limited legislative history which is available. During the debate on the revision of the language, Senator Betty Hudson said: "The present statute is wholly inadequate and makes it very difficult to get a rape conviction in the State of Connecticut . . . . The present statute requires that there be force, force enough to overcome earnest resistance, whatever that means. Well in most rape cases, there is no resistance . . . . This statute addresses the problem very, very explicitly and very well." 18 S. Proc., Pt. 7, 1975 Sess., p. 3222.

We conclude that the statutory changes were passed to delete earnest resistance and nonconsent as elements of the crime and, therefore, relieved the court of any obligation to charge on resistance and nonconsent. Proof of resistance was required in the past as a mode of proving that the intercourse was nonconsensual. Under the present statute, the lack of consent is subsumed by proof of the use of force or the threat of the use of force. See *State* v. *Rothenberg,* 195 Conn. 253, 259, 487 A.2d 545 (1985). Whether the existence of a fact—here, consent or nonconsent—is an essential element of a crime depends upon whether that fact forms part of the conduct prohibited by a statute. *State* v. *Scott,* 11 Conn. App. 102, 111–112, 525 A.2d 1364 (1987). Nonconsent is not an element of the crime of General Statutes § 53a-70 (a), but is embodied within the proof required of the use of force or the threat of the use of force.

The elements of General Statutes § 53a-70 (a) by the statute's plain language are the occurrence of sexual intercourse and the use of force or the threat of the use of force to compel it. The propriety of the court's

instructions on these elements is not contested. The fact "that any act engaged in under compulsion would necessarily be nonconsensual"; *State* v. *Esposito,* 192 Conn. 166, 172–73, 471 A.2d 949 (1984); does not impose upon the court a duty to instruct the jury on consent as if it were still a statutory element. The statutory definition of the crime, which in plain language requires that it be the use of force or the threat of the use of force which serves to compel another person to engage in sexual intercourse, is sufficient, in and of itself, to consider whether the victim, in fact, consented to the act.

The defendant next claims error by the trial court in the admission of testimony by a witness for the state who testified to the presence of spermatazoa in a vaginal smear obtained from the victim. The defendant does not contest the qualification of the witness, nor the propriety of the method of testing, but contends that its prejudicial impact outweighs its probative value. See *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982). The defendant asserts that the impact of the evidence about the presence of spermatozoa is prejudicial and that such prejudice is magnified by the lack of any evidence connecting the spermatozoa to the defendant. The defendant further contends that because the only contested issue was whether the defendant compelled the victim to engage in intercourse by force, and not whether intercourse had occurred at all, this evidence was irrelevant and not probative of the crime charged.

The evidence of spermatozoa was relevant and probative of the existence of an element of the crime, namely, sexual intercourse. The defendant did not himself testify at trial, and presented his defense by his cross-examination of the victim. It is not unforeseeable that in such cases the state may prove the use of force by the defendant, and yet fail to prove that sexual inter-

course occurred. The evidence of spermatozoa in a vaginal smear, therefore, is corroborative of the victim's testimony, and relevant and probative of a fact in issue. *State* v. *Periere,* 186 Conn. 599, 607, 442 A.2d 1345 (1982). The weighing of prejudicial impact against probative value is for the trial court. *State* v. *Ibraimov,* supra,352. On review we are limited to determining whether the trial court's ruling " 'exceeded the latitude accorded to the exercise of judicial discretion.' " *State* v. *Williams,* 190 Conn. 104, 108, 459 A.2d 510 (1983), quoting *State* v. *Ibraimov,* supra. The evidence was probative of the element of sexual intercourse. The victim testified that she did have a boyfriend with whom she had sexual relations, which would allow the jury to consider another explanation for the presence of the spermatozoa.

Prejudice which would serve to render the evidence excludable is determined by the impact of extraneous matters. *State* v. *DeMatteo,* 186 Conn. 696, 703, 443 A.2d 915 (1982). Evidence which is directly probative of an element of the crime charged and which introduces no material extraneous to the proof of the crime charged is only probative and not prejudicial.

The defendant's final claim is that the court erred in its charge to the jury because it mentioned only testimony consistent with a verdict of guilty, and did not mention any testimony consistent with a verdict of not guilty. A defendant is entitled to have the jury adequately and correctly instructed. *State* v. *Hines,* 187 Conn. 199, 206, 445 A.2d 314 (1982). The trial court's jury instructions must therefore be clear, accurate, complete and comprehensible. *State* v. *Kurvin,* 186 Conn. 555, 442 A.2d 1327 (1982). We do not, however, view instructions "in artificial isolation from the overall charge." *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986).

"In reviewing the charge as a whole, the instructions 'need not be perfect, as long as they are legally correct, adapted to the issues and sufficient for the jury's guidance.' *State* v. *Parent,* 8 Conn. App. 469, 476, 513 A.2d 725 (1986). The test to be applied to any part of a charge is whether the charge, considered in its entirety, presents the case to the jury so that no injustice will result. *State* v. *Mullings,* 166 Conn. 268, 275, 348 A.2d 645 (1974); *State* v. *Parent,* supra." *State* v. *Thurman,* 10 Conn. App. 302, 324, 523 A.2d 891 (1987).

The trial court, in the course of its instructions to the jury, did comment on the evidence presented by the state. Fair comment on the evidence and the credibility of the witnesses is permissible. *State* v. *Cari,* 163 Conn. 174, 182 A.2d 7 (1972). The defendant contends that the court's comment to the jury that the defendant had "weight lifting abilities," along with its failure to comment on the victim's willingness to travel with the defendant that night, her intent on that night, her credibility as related to her initial reporting of the assault, and her failure to characterize the assault as "rape," all combined to fail to present the case to the jury in such a way that no injustice would result. *State* v. *Roy,* 173 Conn. 35, 376 A.2d 391 (1977).

The trial court, in its instructions to the jury, may refer to the evidence presented, in its discretion, as long as it does not misstate or unfairly summarize the evidence and thereby invade the province of the jury as the trier of fact. *State* v. *Vincenzo,* 171 Conn. 240, 244, 368 A.2d 219 (1976). In this case most of the evidence recapped by the court for the jury was presented by the victim during her direct testimony. This is not unusual or especially significant, since the state's case relied primarily on her testimony. *State* v. *Lacasse,* 9 Conn. App. 79, 84, 516 A.2d 145 (1986). The cross-

examination of the victim did not elicit any recantation or evince any significant discrepancies with her direct testimony.

The trial court properly instructed the jury that it was its duty to assess the credibility of witnesses, weigh the evidence, and determine the facts, and that its recollections and findings were dispositive of the factual issues, and that it should ignore any factual misstatements by the court. The defendant did not testify himself, and did not offer any evidence directly contradicting the victim's testimony. See *State* v. *Vincenzo,* supra, 247.

The defendant has not demonstrated that the court's review of the evidence, in light of the charge as a whole, did not properly serve to instruct the jury of their role as the finders of fact. *State* v. *Storlazzi,* 191 Conn. 453, 465–67, 464 A.2d 829 (1983).

There is no error.

In this opinion the other judges concurred.