## State of Connecticut *v.* John Sinclair
### (7293)

Dupont, C. J., Spallone and Lavery, Js.

Argued October 12, 1989—decision released January 30, 1990

*Barbara Sorrentino,* assistant public defender, for the appellant (defendant).

*John O'Meara,* deputy assistant state's attorney, with whom were *Michael Dearington,* state's attorney, and *James G. Clark,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant is appealing from a judgment of conviction, after a jury trial, of burglary in the second degree in violation of General Statutes § 53a-102, and larceny in the fourth degree, in violation of General Statutes § 53a-125. He also appeals from a judgment of conviction, after a trial to the court, of being a persistent serious felony offender in violation of General Statutes § 53a-40 (b). The defendant claims that the trial court erred (1) in failing to strike the testimony of a witness whose statement was lost by the police, (2) in failing to declare a mistrial or to give a curative instruction after the state made remarks during closing argument that allegedly shifted the burden of proof to the defendant, (3) in refusing the defendant's request to charge on circumstantial evidence and in giving an inadequate instruction on that issue. The defendant also claims that the state committed prosecutorial misconduct when it argued to the jury certain facts not in evidence. We find no error.[1]

---

[1] The defendant's appeal from the judgment of conviction of being a persistent serious felony offender relies on a successful appeal from the felony convictions in the jury trial. Our conclusion that his burglary and larceny

The jury could reasonably have found the following facts. The victim, Penelope Ducker, was a student residing in Morse College, an undergraduate college of Yale University in New Haven. On October 6, 1987, at approximately 9:40 p.m., Ducker left her dormitory room to visit a friend across the hall. When she returned to her room, she saw a man come out of her room carrying her portable stereo. Ducker yelled at the man, who fled down a flight of stairs toward the college courtyard.

Ducker chased the burglar down several flights of stairs. During the chase, the burglar threw down the stereo on the stairs. Ducker stopped and looked out an opened window, through which she could see the man she had chased walking nonchalantly away from the building. She yelled from the window, "Stop that guy. He just ripped me off." The man began to run.

Paul Jahnige and David Thompson, two Yale students, heard Ducker's cries and began to chase the man. Ducker also joined the chase. The three eventually caught up with and surrounded the man on a nearby street, Tower Parkway. He asked his pursuers to "give [him] a break." He began running again, then stumbled and fell. Two gold chains belonging to Ducker spilled from his jacket pocket. Jahnige and Thompson then held the man until the police arrived. At trial, the parties stipulated that the man chased by the Yale students and arrested by the police was in fact the defendant.

I

The defendant first claims that the trial court erred in refusing to strike the testimony of the victim because of the state's failure to produce her statement. We disagree.

convictions are not erroneous necessarily leads to the conclusion that his persistent felony offender conviction is likewise not in error.

After the defendant's arrest, the Yale police tape-recorded Ducker's statement at the station house. It was the policy of the Yale police to transcribe such recordings and then to store the cassettes in a locked drawer, to which only two officers had a key.[2] When neither officer was available to unlock the drawer, as was the case on the evening in question, the cassette would be left on the desk top above the drawer, to be placed in the drawer when it next could be unlocked. The tapes were usually labeled with a small, adhesive-backed piece of note paper and were not catalogued in any way.

Approximately one week before the trial began, the state informed the defendant that it could not locate the cassette tape containing Ducker's statement, although it was able to provide a transcript of the recording signed by Ducker. The defendant filed a motion in limine to suppress Ducker's testimony at trial on the ground that the state had failed to comply with the mandatory discovery requirements of General Statutes § 54-86b and Practice Book §§ 748 through 755. The trial court denied the motion.

The discovery of prosecution witnesses' statements is governed by General Statutes § 54-86b,[3] and the statute is complemented by Practice Book § 752.[4] It is

[2] Recorded statements by defendants, on the other hand, were routinely sent to the New Haven police department for storage.

[3] General Statutes § 54-86b provides in pertinent part: "In any criminal prosecution, after a witness called by the prosecution has testified on direct examination, the court shall on motion of the defendant order the prosecution to produce any statement oral or written of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified, and the court shall order said statement to be delivered directly to the defendant for his examination and use."

[4] Practice Book § 752 provides: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

undisputed that the tape recording of Ducker's statement qualifies as a "statement" within the meaning of § 752. *State* v. *Williamson,* 14 Conn. App. 108, 112, 552 A.2d 815, aff'd, 212 Conn. 6, 562 A.2d 470 (1989). For the purposes of § 752, the term "statement" includes a "stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement." Practice Book § 749 (2).

In order for the provisions of Practice Book § 752 and General Statutes § 54-86b to apply, however, four additional requirements must be met. *State* v. *Williamson,* supra, 113. "First, the witness whose prior statements are sought, must have been a witness for the prosecution and must have testified under direct examination." Id. Although the defendant moved to suppress Ducker's testimony *before* trial began, it was clear at the time the motion was argued that Ducker would be a key witness for the prosecution.[5] "Second, the defendant must make a motion to the trial court for production of the witness' statement." Id. In this case, the state informed the defendant before trial that the tape was lost. A motion for production under these circumstances, when the outcome is preordained, "would simply set judicial wheels unnecessarily spinning . . . ." *Chomko* v. *Patmon,* 20 Conn. App. 159, 163, 565 A.2d 250 (1989). The defendant's pretrial motion to suppress served the intended function of bringing the destruc-

---

[5] We also note that hearing such a motion *before* the witness testifies eliminates the possibility that the court might be required to attempt to "unring the bell"; see *Maness* v. *Meyers,* 419 U.S. 449, 460 n.18, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975); by ordering the witness' testimony stricken. In *State* v. *Mullings,* 202 Conn. 1, 5, 519 A.2d 58 (1987), the court did not note any impropriety in the defendant's use of a pretrial motion to strike testimony under Practice Book § § 752 and 755.

tion or loss of the evidence to the trial court's attention. As to the third and fourth requirements, namely, that the statement "must relate to the subject matter about which the witness has testified" and that it "must be in the possession of the state or its agents"; *State* v. *Williamson,* supra; there is no dispute. The provisions of § 54-86b and § 752, therefore, encompass the tape recording of Duckers' statement. *State* v. *Williamson,* supra.

"It is beyond dispute that the state cannot avoid the discovery provisions of Practice Book § 752 by destroying discoverable material in its possession before the defendant moves for production. . . . The provisions of §§ 752 and 755 . . . 'are mandatory.' " (Citation omitted.) *State* v. *Williamson,* 212 Conn. 6, 13, 562 A.2d 470 (1989). Because the " ' "[s]uppression of relevant, material and otherwise admissible evidence is a severe sanction which should not be invoked lightly" ' "; id., 15; no § 755 sanction is warranted if the nonproduction of the statement in violation of § 752 was not in bad faith; id., 14; and is harmless. Id., 13. We turn first to the issue of whether the nonproduction of the statement was in bad faith.

Although the defendant does not dispute that the loss of the tape was unintentional, he argues that the routine disregard and negligence shown in the police's handling of the tapes is tantamount to bad faith. It is true that, although the Yale police department's general policy was to keep such tapes in a locked drawer, the execution of this policy during the time in question could be characterized as slipshod. The tapes were not catalogued, were poorly labeled, and often were not immediately placed in the drawer but left on the desk where, should the flimsy label fall off, they might be mistaken for blank tapes and reused. In short, although the department policy was to preserve the tapes, in reality the procedures to implement that policy left

open a fair possibility that discoverable material might be negligently lost or destroyed.[6] Although we disagree with the defendant's contention that the routine mishandling of these tapes was tantamount to bad faith, we will bear in mind this aspect of the state's culpability in the loss of the tape as we weigh the defendant's showing of prejudice, to which we next turn our attention.

" 'In the absence of bad faith we employ a balancing test to determine whether sanctions should be imposed for the state's failure to produce the tape. . . . ' *State* v. *Santangelo,* [205 Conn. 578, 587–88, 534 A.2d 1175 (1987)]." *State* v. *Williamson,* supra, 14. The test weighs the state's culpability in failing to produce the tape against any resulting prejudice to the defendant. Id. Because access to the statements of state witnesses is not a constitutional right, the burden of showing prejudice rests on the defendant when the state has not deliberately destroyed the evidence in question. Id., 17.

The defendant claims that the loss of the tape prejudiced him by denying him a tool with which to impeach Ducker's testimony at trial. He argues that this disability was aggravated by the fact that Ducker was the only eyewitness to the crime itself and was unable to make an in-court identification. He further claims that Ducker's description of the defendant's clothes conflicted with that given by other eyewitnesses.

We are not persuaded that the defendant's case was prejudiced by the loss of the tape. First, the defendant was provided with a transcription of the record-

---

[6] The handling of the tape in question took place before this court and the Supreme Court released their decisions in *State* v. *Williamson,* 14 Conn. App. 108, 552 A.2d 815, aff'd, 212 Conn. 6, 562 A.2d 470 (1989). The trial court heard testimony that the Yale police department had revised its policy regarding such tapes after the *Williamson* decisions were released.

ing that was reviewed and signed by Ducker only three days after the crime. The defendant used the transcription to cross-examine Ducker. Second, the defendant's cross-examination of Ducker failed to reveal any critical inconsistencies between her trial testimony and her transcribed statement. Cf. *State* v. *Williamson, supra,* 25 (several critical inconsistencies between witness' transcribed statement and witness' recollection of what she actually told police). Third and most importantly, although Ducker's testimony was undoubtedly important to the state's case, the state presented other witnesses who testified to the defendant's appearance in the Morse College courtyard and his subsequent flight and apprehension. These witnesses also identified the defendant as the person they apprehended on Tower Parkway and testified that when he attempted to escape and fell, several gold chains belonging to Ducker fell out of his pocket. Thus, this is not a case where " 'the appellant's conviction rests heavily on the credibility of a single [witness].' " Id., 21; *United States* v. *Wallace,* 848 F.2d 1464, 1471 (9th Cir. 1988). It is unlikely, therefore, that any discrepancies between Ducker's taped statement and the transcript thereof that may have escaped her review of the transcript would have impeached her trial testimony and " 'tipped the balance of persuasion in favor of [the defendant].' [*United States* v. *Wallace, supra,* 1472]." Id., 21. The trial court did not abuse its discretion in denying the motion to strike Ducker's testimony.

## II

The defendant next claims that the trial court erred in denying his motion for a mistrial and his request for a curative instruction after the state made certain remarks during closing argument that the defendant claims shifted the burden of proof to the defendant on the issue of identity. This claim is without merit.

During closing argument, defense counsel heavily stressed that Ducker could not positively identify the defendant as the person she had seen in her room, and she urged the jury to conclude that there were "two different people involved" in the events leading to the defendant's arrest, and that it was a third party, not the defendant, who Ducker saw in her room. The state, in its rebuttal, attacked the defendant's claim that someone else committed the burglary, saying: "Did this man who defense counsel claims was not John Sinclair . . . did they beam him to the Starship Enterprise? Did they beam him down so that he could walk out the door? I would submit to you that this is not reasonable. It is science fiction . . . . If there are two people there, they've got to know where there's evidence that the person—where that person is because otherwise you are speculating on something that's not supported by the evidence." After the state's rebuttal, the defendant moved for a mistrial or for a curative instruction. The court denied both motions and the defendant took an exception.

"The ultimate question on a motion for mistrial is whether there was ' "substantial and irreparable prejudice to the defendant's case." Practice Book § 887. A mistrial is warranted "only where it is apparent to the court that as a result of some occurrence during trial a party has been deprived of the opportunity for a fair trial." ' *State* v. *Jennings,* 5 Conn. App. 500, 505, 500 A.2d 571 (1985). Such a motion involves the court's wide discretion. Id." *State* v. *Kluttz,* 9 Conn. App. 686, 705, 521 A.2d 178 (1987); see also *State* v. *Gonzalez,* 18 Conn. App. 643, 646, 560 A.2d 468 (1989).

The state of course bears the burden of proving each and every element of the crime charged beyond a reasonable doubt. *State* v. *LaCasse,* 9 Conn. App. 79, 516 A.2d 145, cert. denied, 201 Conn. 815, 518 A.2d 72 (1986). This burden has been described as requiring

proof that " 'precludes every reasonable hypothesis except that which it tends to support and is consistent with the defendant's guilt and inconsistent with any other rational conclusion.' " *State* v. *Brown,* 163 Conn. 52, 64, 301 A.2d 547 (1972). The defendant, should he choose to present a defense, bears the burden of proving his defense to a point where, on the whole evidence, the jury believes that the state has failed to prove the elements in question beyond a reasonable doubt. Id., 66.

In the present case, the defendant chose to argue, based on Ducker's failure to identify him as the person in her room, that it was another individual that committed the burglary. The defendant could not succeed with such a theory unless he proved facts sufficient to allow the jury to view it as a reasonable hypothesis consistent with his innocence. See id. Further, the prosecutor is entitled to comment on the defendant's failure to support his own factual theories. See *United States* v. *Rodriguez,* 556 F.2d 638, 641 (2d Cir. 1977); *State* v. *Kluttz,* supra, 706, 708. For the state to do so in no way denied the defendant a fair trial or necessitated a curative instruction. The state's remarks did not shift the burden of proof of the state. See *State* v. *Ostolaza,* 20 Conn. App. 40, 44, 564 A.2d 324 (1989).

### III

The defendant next claims that the trial court's instructions to the jury on circumstantial evidence unconstitutionally diluted the state's burden of proof. The defendant requested that the jury be instructed that "[w]here the state relies upon circumstantial evidence to prove an element of a crime, you must find both that the basic fact and the fact you are asked to infer have been established beyond a reasonable doubt." The court instead instructed the jury: "Circumstantial evidence of an event is indirect evidence, that is, the testimony of the witnesses or evidence by exhibits

as to the existence of certain facts or . . . other events from which . . . the jury may logically and reasonably conclude that the events in question did happen . . . . [W]ith circumstantial evidence the jury first has to determine the credibility of the witnesses and the exhibits and then decide whether the facts testified to do exist. Then they have to decide whether the happenings of those events or existence of those facts lead logically to the conclusion that other facts existed and/or other events occurred and ultimately that this crime was committed by the defendant."

Before giving the challenged instruction, the court charged the jury on the state's burden of proving the defendant guilty beyond a reasonable doubt, stating that "one witness's testimony is sufficient [to satisfy the state's burden of proof] if you believe it beyond a reasonable doubt. And if it is established alone *or together with other testimony* and all the elements of the crime beyond a reasonable doubt." (Emphasis added.) The court further instructed the jury on the relevance of this burden to the issue of identification: "[T]he burden of proof is at all times upon the state to prove beyond a reasonable doubt all the essential elements of the crime or crimes. One of those elements of course is the identification of the accused as the person who committed the crime. So even though you find that a crime was committed, you must also establish beyond a reasonable doubt that this accused committed [it]." The court reiterated this point later in its instructions.

The defendant argues that the court's instructions permitted the jury to draw inferences from facts proved to a degree less than beyond a reasonable doubt, or misled the jury into believing that it could do so. Viewing the challenged instruction in the context of the overall charge; *State* v. *Anderson,* 212 Conn. 31, 37, 561 A.2d 897 (1989); we conclude that the instruction was not erroneous. "The failure of the trial court to utter

the talismanic 'beyond a reasonable doubt' phraseology after each and every statement of what is to be proved by the state, or of how that proof is to be made, does not necessitate reversal. . . . The statement that inferences should be reasonably and logically drawn is not, in and of itself, erroneous. In fact, such an instruction, it has been previously recognized, 'is entirely proper. . . . In this case, the instruction did not at any time charge the jury on a standard of proof less than the 'beyond a reasonable doubt' requisite." (Citations omitted.) *State* v. *Wylie,* 10 Conn. App. 683, 691, 525 A.2d 528, cert. denied, 204 Conn. 807, 528 A.2d 1154 (1987). In fact, the court specifically instructed the jury that identification was an element provable only by proof beyond a reasonable doubt, and that the testimony of several witnesses taken together and believed beyond a reasonable doubt could support a guilty verdict if it satisfied all the elements of the crime by that standard. In viewing evidence that could yield contrary inferences, a jury may draw inferences consistent with guilt or consistent with innocence. *State* v. *Dumlao,* 3 Conn. App. 607, 491 A.2d 404 (1985).

Although the trial court's instructions could have stated more explicitly the requirement that the facts essential to the ultimate inference of guilt must be proved beyond a reasonable doubt, we are satisfied that the court's instructions, read as a whole, adequately conveyed this essential idea to the jury. See *State* v. *Silano,* 204 Conn. 769, 774–75, 529 A.2d 1283 (1987).

## IV

The defendant's final claim is that he is entitled to a new trial because the state committed prosecutorial misconduct by making certain factual assertions during closing argument that were not supported by facts in evidence. Specifically, the defendant claims that the

state in two separate instances overstated the factual scope of, and thus mischaracterized, a stipulation reached between the parties at trial.[7] He further claims that the state argued that there was testimony indicating that the staircase down which the defendant was alleged to have fled opened only onto the first floor exit, that the only way to go was "out the door," although no such testimony had been offered. According to the defendant, the prosecutor's improper remarks deprived him of a fair trial in violation of his federal and state constitutional rights. U.S. Const. amend. XIV; Conn. Const. art. I, § 8.

The defendant did not preserve this claim at trial and he therefore seeks review under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973): We conclude that it does not qualify for *Evans* review.

Although the defendant has labeled these claims as constitutional, review of the record discloses that they are not truly of constitutional magnitude. *State* v. *Golding,* 213 Conn. App. 233, 239, 567 A.2d 823 (1989). "Review of unpreserved claims of prosecutorial misconduct has been reserved for instances where the claimed misconduct was part of a pattern of misconduct repeated throughout the trial or was blatantly egregious. *State* v. *Williams,* 204 Conn. 523, 537, 529

---

[7] The parties stipulated "that the individual being held by the Yale students on Tower Parkway on the evening of October 6, 1987 and who was taken into custody by the Yale police, was in fact the defendant . . . ." The defendant claims that the following statements "blatantly" misstate the stipulated facts. First: "Now, when counsel gets to argue about the chains, he wants you to believe that this defendant didn't have those chains even though it was stipulated to the fact that this is the guy who was on Tower Parkway, who fell down on Tower Parkway . . . ." Second: "What you know is that this man was at the top of the stairs and he had run down the stairs and he had the same height and build and he looked very similar and he was out of her sight for maybe five seconds. There was no one else in sight. She saw the man come out of the door. It was definitely John Sinclair because he essentially admitted it was."

A.2d 653 (1987); *State* v. *Reddick,* 15 Conn. App. 342, 354–55, 545 A.2d 1009, cert. denied, 209 Conn. 819, 551 A.2d 758 (1988)." *State* v. *Horne,* 19 Conn. App. 111, 128, 562 A.2d 43 (1989).

The incidents cited by the defendant simply do not fall within either of these categories. The two claimed mischaracterizations of the stipulation are certainly not examples of blatant prosecutorial misconduct; in fact we doubt whether the first claimed misstatement is truly inaccurate. See footnote 7, supra. Regarding the defendant's claim that the state inaccurately claimed that there was testimony to the effect that the exit to the courtyard was the only exit from the staircase in question, we note that there was no testimony directly on this issue, although the jury could have reached by inference the conclusion that the state ascribed to direct evidence. The state's suggestion was incorrect, but was not so misleading or prejudicial that it rose to the level of egregious prosecutorial misconduct. We therefore decline to review these claims further.

There is no error.

In this opinion the other judges concurred.