389 So.2d 262 (1980)
Edward Charles SIMONS, Appellant,
v.
STATE of Florida, Appellee.
No. MM-254.
District Court of Appeal of Florida, First District.
October 7, 1980.
Rehearing Denied October 6, 1980.
Michael J. Minerva, Public Defender, and Carl S. McGinnes, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
ERVIN, Judge.
Simons appeals his conviction for robbery of a grocery store. He contends the trial *263 court erred in admitting eyewitness identification testimony and a group of mug shots which included his photograph. We reverse and remand.
Appellant, a former employee of the store, was identified by two employees as one of the robbers. One of the employees, a bag boy named Harry Nisenboin, stated at trial that Simons's face during the robbery was colored with charcoal and covered by a stocking mask. His view of him was limited to no more than seven seconds. Following the robbery, Nisenboin overheard another employee identify Simons by name to an investigator. Later Nisenboin selected appellant's photograph from one of six pictures shown him. The front of the photo bore the caption of the Jacksonville Sheriff's Office and the date "1-30-72". Written on the reverse side was Simons's name.
On the day before Nisenboin was to appear as a witness at trial, he was asked by an assistant state attorney to go to the courtroom to see whether he could recognize Simons who was then to be arraigned on an amended information. At the arraignment, with Nisenboin present, Simons was called by name and represented by counsel. At trial, the following day, during direct examination of Nisenboin, the state elicited the response from him that he had in the courtroom the day before identified Simons. The defense moved for mistrial. Outside the presence of the jury Nisenboin stated that his in-court identification of appellant was based entirely upon his view of him during the robbery. The court ruled that since the witness's identification was grounded upon a source independent of the pretrial taint, the motion would be denied.
We disagree that Nisenboin's in-court identification testimony cured the suggestiveness which was inherent in the pretrial identification procedure. The state elicited testimony from the witness during its case-in-chief showing that he had identified the defendant at an arraignment which, for all practical purposes, was uncounseled. The admission of such evidence is contrary to the rule in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), holding that a pretrial corporeal identification conducted after a suspect has been indicted is a critical stage in the criminal proceeding at which the Sixth Amendment entitles the accused to the presence of Counsel. In Wade, during the government's direct examination, witnesses to a robbery who had identified the defendant at an uncounseled pretrial lineup testified at trial that the defendant was the man who had committed the robbery. After granting certiorari review of Wade's conviction, the United States Supreme Court stated that because a likelihood existed that the witnesses' in-court identifications were based on their observations of the defendant at the pretrial lineup-and not at the scene of the crime-the conviction would be vacated pending a hearing before the trial court to determine whether the in-court identifications were independent of the pretrial tainted lineup, or whether the introduction of the identification as evidence was in any event harmless error. 388 U.S. at 240, 87 S.Ct. at 1939.
Wade's companion case Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), differed from Wade in one critical aspect. In Gilbert-unlike Wade-the prosecution during trial elicited testimony from its witnesses on direct examination that they had identified the accused at an uncounseled pretrial lineup. The Court stated that the identification testimony was "the direct result of the illegal lineup `come at by exploitation of [the primary] illegality.' Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441." 388 U.S. at 272-273, 87 S.Ct. at 1956. The state "therefore [would] not [be] entitled to an opportunity to show that that testimony had an independent source." Id. at 273, 87 S.Ct. at 1957. The Court announced that only a strict rule of exclusion barring such testimony could "be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup." Id. Gilbert's conviction was vacated and the case remanded to the state court to determine only whether the *264 error resulting from admitting such evidence was harmless beyond a reasonable doubt, as required by Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
The Gilbert rule was also applied in Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), to an uncounseled preliminary hearing. At the hearing, the defendant's name was called and, in the presence of the victim, he was taken before the bench and advised he was charged with rape. At trial the victim testified that her in-court identification was independent of her identification at the uncounseled confrontation. In reversing the denial of a petition for writ of habeas corpus, the Court stated: "[P]etitioner's Sixth Amendment rights were violated by a corporeal identification conducted after the initiation of adversary judicial criminal proceedings and in the absence of counsel." 434 U.S. at 231, 98 S.Ct. at 466. It continued that the prosecution "cannot buttress its case-in-chief by introducing evidence of a pretrial identification made in violation of the accused's Sixth Amendment rights, even if it can prove that the pretrial identification had an independent source." Id. As it had done in Gilbert, the Court remanded the case to the appellate court to consider whether the admission of the identification testimony was harmless beyond a reasonable doubt.[1]
The state argues that the Gilbert-Moore rule has no application to this case because the defendant was represented by counsel at the arraignment on the amended information. We consider this a meaningless distinction. Counsel's presence was simply for the purpose of assisting the defendant in pleading to the amended charge. He did nothing more; indeed, because the state had not provided him notice of its intention to have the witness present, he was unaware the witness would then be in the courtroom. Had counsel been informed of the state's purpose, he could conceivably have taken corrective steps to avoid the suggestiveness, such as, by requesting the postponement of the arraignment until a lineup be arranged; by moving the witness be excused from the courtroom while the charges were read; by cross-examining the witness to test his identification before it hardened. See Moore v. Illinois, supra, 434 U.S. at 230, n. 5, 98 S.Ct. at 465 n. 5. The state cannot seek to finesse an identification which was inherently suggestive by arguing that counsel's mere presence cured the taint.
We are not unaware that following remand by the United States Supreme Court to the Seventh Circuit Court of Appeals, the latter court held that the admission of the pretrial identification testimony was harmless constitutional error. U.S. ex rel. Moore v. People of Ill., 577 F.2d 411 (7th Cir.1978), cert. den., 440 U.S. 919, 99 S.Ct. 1242, 59 L.Ed.2d 471 (1979). In so deciding, the court addressed two questions: (1) whether the victim's in-court identification was reliable even though the pretrial confrontation *265 was suggestive, and (2) whether Illinois presented clear and convincing evidence that the victim's identification at trial was based upon her observations of Moore independent of the uncounseled pretrial confrontation. The factors overlap as to both questions, and they include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
While there are certain similarities between the facts in Moore and those here, one being that the witnesses in both cases were positive their in-court identifications were independent of the pretrial error, the witnesses' level of certainty alone is clearly not a sufficient ground to conclude the error is harmless beyond a reasonable doubt since Gilbert v. California, supra, forbids the introduction of in-court identification testimony notwithstanding the witness's certitude that his identification is based entirely upon his view of the defendant at the crime scene. Detailed facts corroborating the assertion must also be demonstrated. In the present case, those facts were not clearly and convincingly established.
Addressing the question whether an adequate opportunity existed for the witness to view the criminal at the time of the robbery, we find the record discloses Nisenboin, who had never before seen the defendant, had at most only seven seconds to view the robber's charcoal-colored face, covered at all times by a stocking mask; whereas in Moore, the victim, who had encountered the defendant at a bar for several minutes the night before the rape, during the assault saw the rapist's unmasked face for a full 10-15 seconds. Additionally, in Moore, the victim was able to describe the criminal accurately to the officers, and was able to select her assailant twice from photographs displayed to her. True, Nisenboin identified Simons's photograph from the photopack shown him; nevertheless we do not know whether any suggestiveness tainted the photographic identification.[2] Moreover, as opposed to the detailed description which the victim in Moore gave to the police, Nisenboin's description of Simons was at best sketchy: the robber was white, his eyes were deep-set and his nose had a bump on it. We note also that in Moore-unlike the facts here-important corroborating evidence linking the defendant with the crime was found at the scene; a letter and a notebook, both identified as belonging to the defendant. Finally, in the present case, the assistant state attorney directed the witness to go to the courtroom for the specific purpose of determining whether he could identify Simons, known previously to Nisenboin by name as one of the robbers. In Moore, the record was ambiguous whether the victim knew at the time the defendant came into the courtroom he was the suspect she was asked to identify. U.S. ex rel. Moore v. People of State of Ill., supra, at 415, n. 15.
We think it impossible to state that the prosecution has shown beyond a reasonable doubt that the one-on-one confrontation was, under the circumstances, harmless error.[3] While one other witness also identified *266 appellant, and her testimony was not infected by any pretrial suggestiveness, it would be highly conjectural to say that the jury would nevertheless have convicted defendant solely on her testimony. Two other store employees, present during the robbery, who had previously known Simons while he was there employed, were unable to identify him, one stating he did not know whether Simons was involved in the robbery, the other positive that Simons was not involved.
Since this case must be remanded for new trial as to the first point, with Nisenboin's identification testimony excluded, we do not address the second point raised, the admissibility of the "mug shots." We express concern, however, whether their prejudicial effect may outweigh whatever probative value they have for identification purposes.
Our opinion today should not be interpreted, as suggested by the dissent, as upholding "the `right' of a defendant not to be seen in the courtroom by the victim or any other witness." Infra at 267. Rather, consistent with Gilbert-Moore, we repeat there is no right of the government to cause a witness to be present at a pretrial judicial proceeding for the sole purpose of bolstering that witness's later in-court identification of a defendant. And should the government produce testimony at trial of such a tainted one-on-one confrontation, it must either be prepared to demonstrate, if it can, why the error caused by its misconduct was harmless beyond a reasonable doubt, or, if it cannot, suffer the sanction of having the case remanded for new trial and the tainted identification testimony excluded from evidence.
REVERSED and REMANDED for new trial.
ROBERT P. SMITH, Jr., J., concurs.
BOOTH, J., dissenting with opinion.
BOOTH, Judge, dissenting:
The majority reverses the judgment of conviction of armed robbery because, at the time of defendant's arraignment for that crime, one of the victims of the robbery was in the courtroom, saw the defendant and recognized him as the robber. The majority finds that this viewing of defendant violates some unspecified "right" of an accused and that the prosecution was guilty of misconduct in allowing the victim to view the arraignment. On this basis, the majority requires, as an object lesson to the prosecution, that sanctions be imposed against the State in the form of a new trial without the identification testimony of the victim Nisenboin.
The public should not suffer the insult of a reversed conviction and the expense of a new trial where this court does not find that the original trial was unfairly conducted or the evidence insufficient to support the jury verdict of guilty. If the conduct of the State offends the majority and deserves disapproval, the majority's purpose can be accomplished by an opinion which so states without setting aside the conviction. This is particularly true where a new rule is announced, as here, prohibiting victims of crimes from viewing the accused in a courtroom setting prior to giving their identifying testimony at trial.
Decisions cited in support of the reversal here all involve the infringement of right to counsel either by submitting an accused to *267 a lineup[1] or to a pretrial hearing[2], in each instance without the presence of his counsel. Even in those cases, however, convictions were not reversed absolutely, as here, but were remanded for determination as to the effect of the violation. Here, the majority holds, as a matter of law, that the testimony of the witness was tainted and a new trial required.
In this case, defendant was represented by counsel, who was present at the arraignment. His complaint is, apparently, that he and his counsel were unaware[3] of the witness observing in the back of the courtroom. Defendant suggests that, had his counsel been aware, counsel could have had the witness removed or waived his client's appearance at the arraignment. Other conceivable stratagems could include a paper sack over the head. The fact that such steps might have been taken does not mean that the defendant or his counsel had a "right" to prevent the witness from seeing him. The privilege against self-incrimination is not applicable to an accused's appearing in court or standing for identification because this is not "testimonial" activity. Schmerber v. California, 384 U.S. 757, 761, 764, 86 S.Ct. 1826, 1830, 1832, 16 L.Ed.2d 908 (1966); United States v. Wade, 388 U.S. 218, 222, 87 S.Ct. 1926, 1929, 18 L.Ed.2d 1149 (1967). The Supreme Court of the United States has also held that the face of a defendant is not suppressible evidence in the courtroom regardless of illegality in connection with the defendant's physical presence in the courtroom. United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). In Crews the court also held that illegal lineups had not tainted the identification testimony.[4]
There is no "right" of a defendant not to be seen in the courtroom by the victim or any other witness. Indeed, the rights of the public and the press to observe judicial proceedings in person or through television cameras and news photographs runs contrary to any such claim. Had this victim seen the defendant on a television newscast of the arraignment or in a newspaper, the witness would not be disqualified from testifying *268 and identifying the accused at trial. No more so here.
The essential question in cases such as this is whether the circumstances under which a witness sees the accused "at or after initiation of adversary judicial criminal proceedings"[5] has materially affected the evidentiary value of the identifying testimony. This is a question for the trial court. The presence of counsel at lineups or showups insures that the admissibility and the credibility of the identifying testimony can be fully put at issue at trial. Counsel's presence in the instant case provided that safeguard. Further, the trial court conducted a hearing and determined that the identification of defendant was based on the witness' independent knowledge apart from seeing defendant in the courtroom. The record of that hearing, as well as the record as a whole, supports the trial court's determination.
Assuming that some right of defendant was violated by his being seen in the courtroom, the affirmance of the judgment nonetheless is firmly supported by Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), on remand U.S. ex rel. Moore v. People of Illinois, 577 F.2d 411 (7th Cir.1978), certiorari denied 440 U.S. 919, 99 S.Ct. 1242, 59 L.Ed.2d 471 (1979). In Moore, the accused was taken to a pretrial hearing without counsel where the sole victim and identifying witness was present. The victim in that case had seen her assailant for 10 to 15 seconds. She had viewed photographs but refused to make a positive identification without seeing the defendant in person.[6] The day following the defendant's arrest, a policeman took the victim to the preliminary hearing. He told her she was going to view a suspect and to identify him if she could. He had her sign a complaint naming the defendant as her assailant. The court called defendant's name, read the charges and outlined the corroborating evidence. The victim heard all this and was then called to come forward to the bench. At that point the State's attorney asked the victim to identify the defendant, and she verbally did so. In Moore, the witness subsequently testified on direct examination that she had identified the defendant at the preliminary hearing. Despite the "suggestiveness" of the circumstances under which the identification was made, the absence of defense counsel and the use of the testimony concerning identification at preliminary hearing, the United States Supreme Court remanded the cause for determination by the lower court as to whether the testimony had been properly admitted at trial. Following remand, the Circuit Court of Appeal determined that the witness's testimony had not been tainted by the suggestive circumstances of the preliminary hearing and that any error was harmless. The conviction was affirmed.
The facts here are stronger than those in Moore for finding that the identification was independent of the courtroom viewing and not harmful error. The robbery occurred at closing time, as six employees were preparing to leave the store. The witness, Harry Nisenboin, testified that the *269 area was brightly lit; that the robber stood a short distance away from him and put his gun into his, Nisenboin's face; that the robber had a loose stocking over his head and some charcoal stripes on his cheeks and forehead; that he had deep set eyes and a prominent ridge on his nose; that the stocking did not distort his features very much; and "you could see his face." Nisenboin identified defendant in a photo lineup prior to trial.[7] His identification of defendant at trial was clear and positive. It was corroborated by the identification of another of the victims.
The majority's concern with the alleged misconduct of the State has led it to overlook the essential question in the case, which is whether the interest of justice requires a new trial. The evidence shows, and the jury found that the defendant was guilty of armed robbery. The trial court correctly determined that the fairness of the proceedings had not been affected by the victim's viewing of the accused in the courtroom, and that determination, as well as the conviction, should be affirmed.
I respectfully dissent.
NOTES
[1] The dissent suggests, infra page 267, that the Gilbert-Moore test is somehow vitiated by the Court's later opinion in United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980) because Crews held that the victim's in-court identification was not tainted by evidence (line-up and photographic identification) which was the product of an illegal arrest. On the contrary, the Gilbert-Moore rule was unaffected by Crews. That rule was conceived as a prophylactic device, designed more to guard against egregious, overreaching prosecutorial conduct than to suppress evidence seized in violation of constitutional safeguards. Crews, unlike the situation here, simply did not involve any prosecutorial misconduct affecting the defendant's trial. Observe the following comments:

In this case, the robbery victim's presence in the courtroom at respondent's trial was surely not the product of any police misconduct. She had notified the authorities immediately after the attack and had given them a full description of her assailant. The very next day, she went to the police station to view photographs of possible suspects, and she voluntarily assisted the police in their investigation at all times. Thus this is not a case in which the witness' identity was discovered or her cooperation secured only as a result of an unlawful search or arrest of the accused. Here the victim's identity was known long before there was any official misconduct, and her presence in court is thus not traceable to any Fourth Amendment violation. 445 U.S. at 471, 100 S.Ct. at 1250.
[2] At trial, the defense and the state stipulated that Nisenboin identified a photograph of defendant as one of the robbers. Because, however, the officer who displayed the photographs to Nisenboin did not testify, the testimony of the officer relating to the procedure involved during the photographic display was stricken as hearsay. Whether the opportunity for suggestiveness was exercised during the display by revealing to Nisenboin Simons's name, listed on the reverse side of the photograph, is not revealed from this record.
[3] The dissent's assertion that the trial court is in the better position to so decide, infra at page 267, is not well founded. The trial court's order denying the motion for mistrial addressed only the question whether, given the tainted arraignment procedure, the witness's in-court identification was based solely upon his observations of the defendant at the time of the robbery. Such a determination, as above observed, does not comply with the Gilbert-Moore test. The trial court was not asked to decide, and did not decide, if the error was harmless beyond a reasonable doubt. This is a question reserved as much for appellate determination as it is for trial decision. As noted in Chapman: "While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts." 386 U.S. at 24, 87 S.Ct. at 828. Indeed, the Chapman Court itself reviewed the record, applied the test and was unable to declare a belief that the error was harmless beyond a reasonable doubt. Additionally, in Moore, following remand to it by the United States Supreme Court, the Seventh Circuit Court of Appeals, without further remand to the district court, examined the record and applied the test adversely to defendant's contentions. U.S. ex rel. Moore v. People of Ill., supra.
[1] U.S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).
[2] Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977).
[3] Testimony at the hearing on motion for mistrial was that defense counsel saw the witness sitting in the courtroom and spoke to him. Defense counsel testified he had not "registered recognition," although he had taken the deposition of the witness.
[4] U.S. v. Crews, 445 U.S. 463, 472, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537 (1980), in part as follows:

Nor did the illegal arrest [of defendant] infect the victim's ability to give accurate identification testimony. Based upon her observations at the time of the robbery, the victim constructed a mental image of her assailant. At trial, she retrieved this mnemonic representation, compared it to the figure of the defendant, and positively identified him as the robber... .
This is not to say the the intervening photographic and lineup identifications-both of which are conceded to be suppressible fruits of the Fourth Amendment violation-could not under some circumstances affect the reliability of the in-court identification and render it inadmissible as well. Indeed, given the vagaries of human memory and the inherent suggestibility of many identification procedures, just the opposite may be true. But in the present case the trial court expressly found that the witness' courtroom identification rested on an independent recollection of her initial encounter with the assailant, uninfluenced by the pretrial identifications, and this determination finds ample support in the record. In short, the victim's capacity to identify her assailant in court neither resulted from nor was biased by the unlawful police conduct committed long after she had developed that capacity.
.....
Respondent argues, however, that in one respect his corpus is itself a species of `evidence.' When the victim singles out respondent and declares, `That's the man who robbed me,' his physiognomy becomes something of evidentiary value, much like a photograph showing respondent at the scene of the crime. And, as with the introduction of such a photograph, he contends that the crucial inquiry for Fourth Amendment purposes is whether that evidence has become available only as a result of official misconduct. [The majority rejects this contention, supra, in the opinion of Mr. Justice White at 445 U.S. at 477, 100 S.Ct. at 1253.]
[5] Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972).
[6] U.S. ex rel. Moore v. State of Illinois, 577 F.2d 411, 415 (7th Cir.1978):

Whether the victim was unable or simply unwilling to make a positive identification from the photographs is not crystal clear from the record... . [I]t may well be that her inability or unwillingness to make a positive identification was due either to the quality of the photographs or to her expressed desire to see the suspects in person so that she would be sure she was pointing her finger at the right man.
In any event, whatever the cause, the victim's refusal to make a positive photographic identification admittedly complicates our inquiry because, although she had no doubt that Moore was her assailant once she had an opportunity to view him in person, her first confrontation with him after the rape occurred in highly suggestive circumstances. We suspect that not even the victim could say with certainty that the suggestiveness inherent in the pretrial confrontation had no influence whatsoever on her identification of Moore. We are convinced, however, that the suggestive circumstances in which confrontation took place at most reinforced the witness's conviction in the identification she made, but did not induce the identification.
[7] See, Fuller v. Wainwright, 268 So.2d 431 (Fla. 4th DCA 1972), and Garrard v. State, 335 So.2d 603 (Fla. 3d DCA 1976); conviction in each case upheld, even though identifying witness was shown a photograph of defendant shortly before trial and was told that photograph was of the defendant.