673 So.2d 176 (1996)
Carlos MACIAS, Appellant,
v.
STATE of Florida, Appellee.
No. 94-1626.
District Court of Appeal of Florida, Fourth District.
May 15, 1996.
*178 Richard L. Jorandby, Public Defender, and Ellen Morris, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ettie Feistmann, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
PARIENTE, Judge.
We withdraw our opinion dated March 13, 1996 and substitute this opinion. We deny defendant's motion for rehearing and certification.
Defendant appeals his convictions and sentence for aggravated assault with a deadly weapon; aggravated assault with intent to commit a felony; attempted sexual battery; robbery; attempted kidnapping; battery and escape. We affirm the convictions, but reverse the imposition of consecutive sentences and mandatory minimums on all charges other than the escape charge based on Hale v. State, 630 So.2d 521 (Fla.1993), cert. denied, ___ U.S. ___, 115 S.Ct. 278, 130 L.Ed.2d 195 (1994), and Daniels v. State, 595 So.2d 952 (Fla.1992). We also write to address two of the multiple issues raised in this appeal: (1) the propriety of the voice identification of defendant by the victim; and (2) whether the joinder of the escape charge with the other charges constituted reversible error.

FACTS
All of the charges except for the escape arose from an incident which occurred at approximately 10:30 p.m. The victim, age 53, was driving home from work when she was forced off the road and into an embankment by a white van. The victim described in vivid and precise detail that her assailant quickly approached her car window, not letting her see his face, and told her "lady, I'm going to rape you and kill you." According to her testimony, this same phrase was repeated at least twice during the course of the *179 incident, which lasted two to ten minutes. Also, the assailant instructed her to "open the door" and told her "I want your money." When she did not open the door, the assailant raised his voice, which had previously been smooth and slow, and said "lady, I said open the door."
The victim testified that the assailant unzipped his pants, pulled out his penis and told the victim to "suck me"; eventually forced her out of her car and toward his van; ripped open her smock and put his fingers under her bra strap; and took a $20 bill and a large amount of change from the victim. The victim testified she would remember his words and voice for the rest of her life. She did not, however, have the opportunity to identify his physical features other than in a general way because she only observed him from the moustache down. Defendant was later arrested because he and his clothing matched the victim's general description of the assailant and he owned a van similar to the van described by the victim.
The critical link identifying defendant as the assailant was the victim's voice identification of defendant. The victim made two pretrial voice identifications and one in-court identification. At trial the victim testified as to the circumstances of both pretrial voice identifications.
The victim first positively identified defendant's voice as that of her assailant 32 days after the incident when she listened to a taped police interrogation of defendant made at the time of his arrest. The majority of the three-minute tape consists of the detective speaking and defendant invoking his right to counsel and declining to speak. However, defendant can be heard telling the detective that "I'm not going to be railroaded again."
Three months after the crime, at the hearing on defendant's motion to reduce bond, the victim again identified defendant based on his voice as the person who had attacked her. At this hearing, defendant was singled out by name. Although defendant was represented by counsel at the bond hearing and defense counsel was aware that the victim was present, counsel was never advised that the victim was present for the purpose of making a voice identification of his client.
Defendant did not testify at trial. However, over defendant's objection, defendant was compelled to repeat the following:
Lady, get out of the car. Lady, I'm going to rape you and I'm going to kill you. Lady, I said give me all your money.
Following this recitation, the victim again identified defendant as her assailant, stating that she had "absolutely no doubt."

IMPERMISSIBLY SUGGESTIVE VOICE IDENTIFICATION
Impermissibly suggestive identification procedures causing a likelihood of irreparable misidentification violate a defendant's right to a fair trial resulting in a denial of due process. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Grant v. State, 390 So.2d 341, 343 (Fla.1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981). The basic concern with respect to procedures employed in pretrial identifications by the victim or witness has been to eliminate or minimize the risk of convicting the innocent. In United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967), Justice Brennan addressed the very real danger of a mistaken identification arising from utilizing an unduly suggestive identification procedure:
The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification.... A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification.
(Footnote omitted). Concerning the relationship between a suggestive procedure and the risk of misidentification, Justice Brennan several years later observed in Biggers:
It is, first of all, apparent that the primary evil to be avoided is a "very substantial likelihood of irreparable misidentification."... It is the likelihood of misidentification which violates a defendant's right to due *180 process.... Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous.
409 U.S. at 198, 93 S.Ct. at 381 (citation and footnote omitted).
Here we have an identification by voice alone requiring identification of an auditory rather than a visual image. "[I]dentification by voice alone has long been thought to involve `grave dangers of prejudice to the suspect.'" Commonwealth v. Miles, 420 Mass. 67, 648 N.E.2d 719, 728 (1995) (quoting Palmer v. Peyton, 359 F.2d 199, 201 (4th Cir.1966)). As stated in Palmer:
Where the witness bases the identification on only part of the suspect's total personality, such as height alone, or eyes alone, or voice alone, prior suggestions will have most fertile soil in which to grow to conviction. This is especially so when the identifier is presented with no alternative choices; there is then a strong predisposition to overcome doubts and to fasten guilt upon the lone suspect.
359 F.2d at 201. In People v. Collins, 60 N.Y.2d 214, 469 N.Y.S.2d 65, 67-68, 456 N.E.2d 1188, 1190-91 (1983), the New York Court of Appeals also expressed its concern about mistaken identification stemming from voice identification:
Although voice identifications are less common [than visual identifications] there is no reason to believe that the risk of mistaken identification is reduced when they have been employed by police prior to trial. It would seem that the ability of a person to make a reliable identification of another on the basis of his voice is at least as difficult as, and perhaps more difficult than, identifying him on the basis of his appearance.
Given the potential for misidentification if suggestive procedures are employed, courts have recognized that "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); Perez v. State, 648 So.2d 715, 719 (Fla.1995); Blanco v. State, 452 So.2d 520, 524 (Fla.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985). As our supreme court has repeatedly stated, a show-up is inherently suggestive because a witness is presented with only one suspect for identification. See Perez, 648 So.2d at 719; Blanco, 452 So.2d at 524.
Just as one-person visual identifications have been condemned as inherently and unduly suggestive, courts of other states have held that one-person voice identifications suffer from the same infirmities. See Palmer; Miles; Collins; McCone v. State, 866 P.2d 740 (Wyo.1993).[1] We agree that one-person voice identifications create a similar potential for misidentification as do one-person show-ups. They are inherently and unduly suggestive and should be avoided by law enforcement agencies unless no other reasonable alternative exists.
The procedures used here for both pretrial voice identifications were impermissibly suggestive because in each instance defendant's voice was the only voice heard by the victim. Because 32 days had elapsed before the first voice identification, there can be no claim of exigency or necessity justifying this procedure. Cf. Stovall; Perez. See also State v. Cromartie, 419 So.2d 757 (Fla. 1st DCA), petition for review dismissed, 422 So.2d 842 (Fla.1982).
The suggestive nature of the method employed here was further exacerbated by the use of defendant's police interview as the voice exemplar and by the victim's knowledge that defendant was a suspect in the crime against her.[2]See Scott v. State, 629 *181 So.2d 238, 241 n. 4 (Fla. 3d DCA 1993); Palmer; Jackson v. State, 594 So.2d 1289 (Ala.Crim.App.1991); State v. Johnson, 207 Mont. 214, 674 P.2d 1077 (1983).

TOTALITY OF CIRCUMSTANCES
Despite the risks of misidentification arising from a suggestive identification procedure, the United States Supreme Court in Manson declined to adopt a rule of per se inadmissibility. Instead the inquiry is whether under the totality of the circumstances there has been a substantial likelihood of irreparable misidentification. See also Gorby v. State, 630 So.2d 544, 546 (Fla. 1993), cert. denied, ___ U.S. ___, 115 S.Ct. 99, 130 L.Ed.2d 48 (1994); Edwards v. State, 538 So.2d 440 (Fla.1989); Blanco; Grant. An identification obtained from a suggestive procedure may be introduced if found to be reliable apart from the tainted procedures. See Manson; Biggers; Edwards. "Reliability is the linchpin in determining the admissibility of identification testimony...." Manson, 432 U.S. at 98, 97 S.Ct. at 2243. As our supreme court has held, an identification resulting from a suggestive procedure is reliable where it is found to be based solely upon the witness's independent recollection of the offender at the time of the crime, uninfluenced by the suggestiveness of the procedure. Edwards, 538 So.2d at 442. The burden is on the state to establish reliability by clear and convincing evidence. Id.
Biggers enumerated factors for a trial court to utilize in assessing the reliability of an identification obtained by suggestive procedures. Although not all-inclusive, these factors serve as a guideline to assess reliability based on the totality of circumstances. See Biggers, 409 U.S. at 199-200, 93 S.Ct. at 382-383; Grant. See also Edwards. These same considerations are applicable to a voice identification. See People v. Portley, 857 P.2d 459, 465 (Colo.Ct.App.1992); Sears v. State, 632 P.2d 946, 950 (Wyo.1981). We review the Biggers factors based on the trial court's findings and our review of the record:
(1) The opportunity to observe and hear the criminal at the time of the crime. The victim had an ample opportunity to hear her assailant's voice throughout the encounter which lasted between two and ten minutes and during which the assailant spoke several times directly to the victim with instructions, commands and threats;
(2) The witness's degree of attention. Although extremely upset, the victim was in close proximity to the assailant throughout the incident and her attention was riveted on him with no other interfering voices or sounds. Moreover, she testified that she would remember her assailant's words and voice for the rest of her life;
(3) The accuracy of the prior description of the accused's voice. The victim had an excellent and detailed memory of the criminal event, describing it and details of defendant's voice with specificity. Identifying characteristics were a soft, but clearly understandable voice; slowly enunciated words with a pause between words; fluent English with a Mexican accent. The victim testified that she determined the voice to be Mexican, an accent with which she was familiar because she had taught Mexican and Spanish children in Miami. All of these characteristics matched defendant's voice as heard by the trial court;
(4) The level of certainty demonstrated at the identification procedure. The victim's initial identification was unequivocal. Although she testified that she recognized defendant's voice the first time, she asked to play the tape for a second time to be "very, very sure." The victim was likewise firm in her identification of defendant at the bond hearing and, after she heard defendant speak in court, she stated she had "absolutely no doubt";
(5) The time between the crime and the confrontation. The time lapse, 32 days, was not an unreasonably long period.
*182 In assessing the victim's reliability under the totality of circumstances, many of the other details given by the victim shortly after the crime concerning defendant's physical characteristics, clothing and van matched those of defendant. Indeed, the saving grace for the state here is that, despite the unnecessarily suggestive pretrial identification procedures, all of the Biggers factors support an extremely strong basis for independent reliability.[3] As the trial court observed:
[The victim] appears to have an excellent and very detailed memory of the events and the statements and the voice. She remembers extreme detail[;] [it] is clear in her presentation of it, and positive in its contents. Let me be sure that the record reflects that I am deeply impressed with the manner in which [the victim] recited the events, recalled the events, and had detail with regard to the events of this case. I think that is very important in these factual findings.
* * * * * *
[H]is voice in my opinion clearly fits [the victim's] description of the voice of her attacker.
Under the totality of the circumstances, we conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress the identification evidence, despite the unduly suggestive procedures utilized. See Gorby, 630 So.2d at 546. See also Jefferson, 425 S.E.2d at 918; Portley, 857 P.2d at 465; Vanderlin, 398 Pa.Super. 21, 580 A.2d 820, 826, (1990); LaCasse, 9 Conn.App. 79, 516 A.2d 145, 147 (1986).

IN-COURT IDENTIFICATION
Concerning the in-court identification, the sole objection raised below was that the in-court identification was impermissibly tainted by the prior unduly suggestive procedures. Based on this objection, we do not find error in allowing the in-court identification based on the trial court's finding of independent reliability. We thus do not reach the question of whether the prejudicial effect of having the defendant speak the actual words used by the attacker in the crime outweighed its probative value in this case. See Commonwealth v. Thomas, 394 Pa.Super. 316, 575 A.2d 921, 924-25 (1990); People v. Davis, 151 Ill.App.3d 435, 104 Ill.Dec. 283, 286, 502 N.E.2d 780, 783 (1986), appeal denied, 114 Ill.2d 548, 108 Ill.Dec. 420, 508 N.E.2d 731 (1987).

RIGHT TO COUNSEL
We next address defendant's claim that the pretrial identifications were obtained in violation of his Sixth Amendment right to counsel. A defendant has the right to counsel when an identification is to be made through the use of a pretrial line-up. See Wade; see also Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Edwards. Identifications obtained in violation of the right to counsel are per se inadmissible.[4]Gilbert; Wade; Edwards.
Justice Brennan distinguished a lineup from other investigatory steps such as the taking of blood samples or fingerprints because a pretrial lineup is "peculiarly riddled with innumerable dangers and variable factors." Wade, 388 U.S. at 228, 87 S.Ct. at 1933. Thus, the presence of counsel is necessary to assure a defendant a meaningful ability to cross-examine the victim or witness making the identification and to protect against potential unfairness which might occur at the time of the lineup:
Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice *183 and assure a meaningful confrontation at trial, there can be little doubt that ... the postindictment lineup was a critical stage of the prosecution at which [the defendant] was "as much entitled to such aid (of counsel) * * * as at the trial itself."
Id. at 236, 87 S.Ct. at 1937 (footnote and citation omitted).
Once a witness has identified the accused in a line-up, it is unlikely that the witness will repudiate the identification. Wade, 388 U.S. at 235, 87 S.Ct. at 1936-37. As such, "the trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation." Id.
These same considerations apply to a voice identification. Although the United States Supreme Court in Wade was primarily concerned with a visual line-up, there was an element of voice identification in that Wade and other persons in the line-up were directed to repeat certain words allegedly used by the perpetrators. Other courts, following Wade, have recognized that the reasoning of Wade applies to the right to counsel for voice identifications subject to the same parameters as those placed on visual identifications. See United States v. James, 496 F.Supp. 284, 288 (W.D.Okla.1977); Thomas v. Leeke, 393 F.Supp. 282 (D.S.C.1975).
Defendant did not assert to the trial court below that his right to counsel had been violated as a basis for suppressing the first pretrial identification made through the use of the taped interview and thus, we do not address the merits of this argument.
In the case of the voice identification at defendant's bond reduction hearing, that identification was obtained without notifying counsel of the fact that the victim was present for the purpose of identifying defendant's voice. See Simons v. State, 389 So.2d 262 (Fla. 1st DCA 1980). Here, unlike Simons, defense counsel was aware of the victim's presence in the courtroom, but this awareness stemmed from the fact the prosecutor had announced that the victim was notified and was present pursuant to the statutory rights afforded her as a victim. See § 960.001(1)(e), Fla.Stat. (1995). There is nothing to indicate that counsel was aware that the court proceeding was to be utilized as a pretrial voice or visual identification or to confirm the victim's prior identification.
Once again the state offers no justification or explanation for failing to conduct a proper voice line-up and for attempting to buttress one unduly suggestive procedure with another. Cf. Grant, 390 So.2d at 344. Nevertheless, because counsel was present and was aware that the victim was present, we do not find a per se violation of defendant's Sixth Amendment rights necessitating a new trial. See Gilbert; Edwards.
To avoid this problem in the future, we urge the state to give notice to defense counsel if a court proceeding is to be used as a method of pretrial identification. If notice is not given, trial courts could preclude the victim from testifying about the identification at the time of trial, unless exigent circumstances are shown for having employed an unnecessarily suggestive method of identification. Because in most pretrial judicial proceedings in the criminal context, the victim's attention will be automatically directed to the person known to be the suspect either by name or other obvious surrounding circumstances, the proceedings are unduly suggestive and the use of pretrial court proceedings as a method of pretrial identification should be discouraged.

PROPER VOICE IDENTIFICATION
Although we affirm the trial court's decision on the admissibility of the voice identification, trial courts should exercise extreme caution, as the trial court did here, before admitting identifications potentially tainted by unduly and unnecessarily suggestive procedures especially where there is no excuse of exigency or necessity for failing to conduct a proper voice identification.
In contrast to the identification procedures used here, a proper voice line-up to identify a defendant by words spoken at the time of the crime consists of having several participants, including the accused, repeating the same phrases. See State v. Packard, 184 Conn. 258, 439 A.2d 983 (1981); Commonwealth v. Marini, 375 Mass. 510, 378 N.E.2d 51 (1978). It has also been suggested *184 that the words chosen for repetition should not be those heard by the witness at the crime scene "because emotion confuses discernment and discrimination." Marini, 378 N.E.2d at 55. Preferably the witness should not see the participants, but only hear the words to prevent tainting of the voice identification by any prior photographic identification or other visual cues. See Miles, 648 N.E.2d at 728; Marini, 378 N.E.2d at 55. All of these cautions increase the likelihood of a reliable identification which does not implicate a defendant's due process rights.

ESCAPE CHARGE
As a separate ground for reversal, defendant maintains that the trial court erred by refusing to sever the escape charge from the other charges, depriving him of his right to a fair trial. The escape occurred approximately six hours after the first series of crimes. Defendant had been arrested and taken into custody for the crimes committed the evening before. Defendant, who had been handcuffed to a wooden chair, apparently broke the chair arm and escaped. He was found later near railroad tracks outside of the police station.
Defendant cites Fenelon v. State, 594 So.2d 292 (Fla.1992), in which the supreme court held that the jury instruction on flight should no longer be given because it could be perceived improperly by the jury as a comment on the evidence from the court and thus could be given undue emphasis. Although the supreme court in Fenelon disapproved of an instruction on flight, it did not address whether evidence of flight would be automatically inadmissible.
In Harvey v. State, 529 So.2d 1083, 1086 (Fla.1988), cert. denied, 489 U.S. 1040, 109 S.Ct. 1175, 103 L.Ed.2d 237 (1989), our supreme court set forth the general rule concerning the admissibility of the escape as relevant evidence of defendant's guilt of the other charges:
Whether escape by an accused in the face of accusation of crime is considered as an admission of guilt from conduct or merely as a circumstance from which a presumption or inference of guilt may be drawn, evidence of that fact is quite uniformly held to be admissible as relevant evidence of guilt of the crime charged.
We do not find any indication that our supreme court in Fenelon intended to overrule Harvey and its well-established precedent that evidence of escape may be admissible to show a defendant's consciousness of guilt. In Mackiewicz v. State, 114 So.2d 684, 689 (Fla.1959), cert. denied, 362 U.S. 965, 80 S.Ct. 883, 4 L.Ed.2d 879 (1960), a prosecution for first-degree murder, our supreme court recognized this evidentiary principle:
It is conceded by counsel for the appellant that the State was entitled to show that the appellant escaped from the Dade County jail, and rightly so, since it is well settled that evidence that a suspected person in any manner endeavors to escape or evade a threatened prosecution, by flight, concealment, resistance to lawful arrest, or other ex post facto indications of a desire to evade prosecution, is admissible against the accused, the relevance of such evidence being based on the consciousness of guilt inferred from such actions. See Blackwell v. State, 79 Fla. 709, 86 So. 224, 15 A.L.R. 465 (1920); Cortes v. State, 135 Fla. 589, 185 So. 323, 327; Daniels v. State, 108 So.2d 755 (1959).
Accord Washington v. State, 432 So.2d 44 (Fla.1983).
In Mackiewicz the supreme court further allowed details of the escape, concluding that:
There can be no doubt that the manner in which an arrest is resisted or an escape is effected has some bearing on the weight to be given by the jury to such evidence in reaching its decision as to the guilt or innocence of the accused, and we know of no case in which such evidence has been excluded.
114 So.2d at 689 (citing Wharton's Criminal Evidence, 12 Ed., § 206, p. 424). See also Bundy v. State, 471 So.2d 9 (Fla.1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986) (jury could reasonably infer consciousness of guilt from defendant's flight six days after victim's disappearance); Plasencia v. State, 426 So.2d 1051 (Fla. 3d DCA), review denied, 436 So.2d 100 (Fla. *185 1983) (evidence of flight from police custody is proper).
As our court observed in Jackson v. State, 435 So.2d 984, 985 (Fla. 4th DCA 1983), "there is a great distinction between the admission of such relevant evidence and the court's instruction to the jury on how they should view the evidence." Because the evidence of his escape would have been otherwise admissible as evidence of guilt on the other charges, we conclude that defendant was not prejudiced by the joint trial on all charges. See Freeman v. State, 547 So.2d 125, 128 (Fla.1989); Harvey; Plasencia; Jordan v. State, 419 So.2d 363 (Fla. 1st DCA 1982).

SENTENCING
The trial court found that defendant was a habitual violent felony offender. The trial court then sentenced defendant to concurrent terms of 10 years on Count II (aggravated assault with intent to commit a felony), 30 years on Count IV (robbery), 30 years on Count V (attempted kidnapping), and one year on Counts VI and VII (battery), for a total of 30 years. The trial court sentenced defendant to additional consecutive terms of 10 years on Count I (aggravated assault), 30 years on Count III (attempted sexual battery) and 30 years on Count VIII (escape). The cumulative sentence on all charges totalled 100 years.
The sentencing in this case is governed by Hale, 630 So.2d at 521. In Hale, our supreme court held that consecutive enhanced sentences may not be imposed under the habitual violent felony offender statute for crimes growing out of a single criminal episode. The court reasoned that because the habitual offender statute constitutes an enhancement statute and the original statutes contained no enhancement provision, the total penalty cannot be further increased by ordering the sentences to run consecutively. See also Brooks v. State, 630 So.2d 527 (Fla. 1993). The trial court specifically found that the escape was a separate and independent offense. Although a consecutive sentence on the escape charge was proper, consecutive sentences for the remaining charges were not because they arose out of the same criminal episode. See Howard v. State, 648 So.2d 1250 (Fla. 4th DCA 1995).
The trial court also imposed consecutive minimum mandatory sentences on Counts I, III and VIII. Under Daniels, 595 So.2d at 952, minimum mandatories imposed as a result of sentencing as a habitual violent felony offender must be concurrent for charges arising out of a single criminal episode where the statute prescribing the penalty for the particular offense does not contain a separate provision for a minimum mandatory sentence. Therefore, the minimum mandatories for Counts I and III must be concurrent, but the minimum mandatory for the escape charge, Count VIII, may properly be consecutive. See Howard.
Accordingly, we remand for resentencing based on Hale and Daniels. On remand, defendant shall be given credit on Counts I and III for county jail time served before imposition of the original sentence in accordance with Daniels.
CONVICTIONS AFFIRMED; SENTENCES REVERSED.
KLEIN and SHAHOOD, JJ., concur.
NOTES
[1] For other discussions of voice identifications, see Jefferson v. State, 206 Ga.App. 544, 425 S.E.2d 915 (1992); Jackson v. State, 594 So.2d 1289 (Ala.Crim.App.1991); Commonwealth v. Vanderlin, 398 Pa.Super. 21, 580 A.2d 820 (1990); State v. LaCasse, 9 Conn.App. 79, 516 A.2d 145 (1986); State v. Johnson, 207 Mont. 214, 674 P.2d 1077 (1983), cert. denied, 467 U.S. 1215, 104 S.Ct. 2693, 81 L.Ed.2d 365 (1984); Sears v. State, 632 P.2d 946 (Wyo.1981).
[2] Recent studies have shown that the percentage of false identifications increase dramatically when the police lead the witness to believe the suspect is in the lineup. See Daniel Coleman, Studies Point to Flaws in Lineups of Suspects, N.Y. Times, Jan. 17, 1995, at B1; Siegfried L. Sporer, Eyewitness Identification Accuracy, Confidence, and Decision Times in Simultaneous and Sequential Lineups, 75 J. Applied Psychol. 22 (1993).
[3] Scientific studies that consider the psychological factors affecting the accuracy of eyewitness identification may cast doubt on whether a witness's confidence or certainty correlates with accuracy of the identification. See McMullen v. State, 660 So.2d 340 (Fla. 4th DCA 1995); David Dunning & Lisa Beth Stern, Distinguishing Accurate From Inaccurate Eyewitness Identifications via Inquiries About Decision Processes, 67 J. Personality & Soc. Psychol. 818 (1994); Sporer, supra.
[4] This right was limited by a divided court in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), to times subsequent to the initiation of adversarial judicial proceedings whether by way of formal charge, preliminary hearing, indictment, information or arraignment.