844 So.2d 745 (2003)
Vantese JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-2160.
District Court of Appeal of Florida, Fifth District.
May 9, 2003.
*747 James B. Gibson, Public Defender, and Barbara C. Davis, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
Vantese Jones was convicted by jury of robbery, kidnaping and armed burglary (with a special finding that he used a firearm in the commission of these offenses), and grand theft of an automobile. In this appeal from the judgment and sentence he raises issues concerning the in-court identification of him by a victim, and whether the kidnaping was only incidental to the commission of the other crimes. We affirm.

FACTS
David Singh, a profoundly hearing impaired native of Guyana, was working as a custodian at the First Baptist Church of Central Florida and School in Orlando. On the night in question Singh observed Jones, who was armed with a semi-automatic weapon, and two other men enter the building. Even though Jones was wearing a hood and white gloves, Singh testified that he immediately recognized him because Jones used to work for an outside cleaning company that the church had employed for about a year.
Jones pointed the gun at Singh, knocked him to the floor, and took his wallet and school keys. Jones then picked Singh up, led him at gunpoint to the financial office, and demanded that Singh show him where any money was located. Singh, however, did not know where any money was kept. According to Singh, Jones then began opening cabinets using the keys that he had taken. When the other two males came into the office, Singh recognized one as Jones' brother who had also worked for the cleaning company. Singh was then laid down on the floor again.
Shortly thereafter, Jones' brother tied Singh's hands behind his back, and placed a see-through white plastic bag over his head. Singh was picked up, moved into a hallway and placed on the floor again. Singh testified that he worked the plastic bag up and saw that Jones and his accomplices were attempting to break into a soda machine. Singh laid on the ground in the hallway for approximately 90 minutes. When Jones and the others turned out the lights, Singh escaped through a rear door and went across the street to a parking lot at a Lowes home improvement store.
As Singh ran from the school, he saw a green car parked next to his own red car, which he noted had been moved from where he had earlier parked it. A few minutes later Singh and some Lowes' employees observed the green car and Singh's red car race through the parking lot in opposite directions.
The police responded to the church around midnight. Singh, through an interpreter told Investigator Linguanti what had transpired. The investigation revealed that all of the soda machines and multiple offices had been ransacked. They observed that a white powdery substance was on the floor and that footprints had been left in it. At the trial an FDLE crime lab specialist testified that she was "100% sure" that Jones' left shoe made the impressions in the substance.
*748 After the owner of the cleaning service that had employed Jones identified him, a patrol car was sent to Jones' house, and confirmed that Jones owned a green car. In the early morning hours immediately after the events at the church school, Investigator Linguanti showed Singh a photo line-up. Singh immediately identified Jones as the perpetrator and circled his picture.
Jones was arrested twelve hours after the robbery. At the time of the arrest the police found a coin wrapper, some loose coins and a plastic bag full of coins in his car. The police then located Singh's car and found a white powdery substance on the floor of the driver's side, along with some tools that did not belong to Singh.
The case proceeded to trial in due course. When the State called Singh as a witness, he was asked to identify Jones as the perpetrator of the crimes, and he successfully did so. As his testimony progressed, however, he became more and more difficult to understand, and the trial judge called a recess to discuss this problem with counsel outside the presence of the jury. During this discussion the trial judge suggested that the State work with the interpreters for Singh in an attempt to "move things along a little faster" for the next day.
On the following morning the State related that prior to Singh's testimony the previous day, and prior to his in-court identification of Jones, it had showed Singh the photo line-up and talked with him about where Jones and the other defendants were seated in the courtroom. Jones moved for a mistrial based on the suggestive in-court identification. The trial court denied the motion, but allowed Jones to cross-examine Singh regarding the identification. On redirect examination Singh testified that on the night of the robbery no one had told him which photo was that of Jones.
After the State rested, Jones moved for a judgment of acquittal on all counts, arguing that the kidnaping, aggravated assault, armed burglary and grand theft were all subsumed into the robbery. The court denied the motion, finding that the physical moving of the victim by Jones was not inherent in the robbery, and therefore constituted a separate crime. The jury found Jones guilty as charged.

THE IN-COURT IDENTIFICATION
Jones asserts that the State engaged in prosecutorial misconduct when it counseled with Singh regarding where Jones would be sitting in the courtroom, and that his motion for mistrial should have been granted. The standard of review in considering the denial of a motion for mistrial is abuse of discretion. Franklin v. State, 825 So.2d 487 (Fla. 5th DCA 2002) (citing Cole v. State, 701 So.2d 845, 853 (Fla.1997)), cert. denied, 523 U.S. 1051, 118 S.Ct. 1370, 140 L.Ed.2d 519 (1998). A motion for mistrial should only be granted when necessary to ensure that a defendant receives a fair trial. Franklin, 825 So.2d at 489. Here we conclude that the trial court did not abuse its discretion.
As applied to cases involving faulty identification procedures, a new trial should be granted only if it is demonstrated that a criminal defendant's due process rights and concomitant right to a fair trial have been violated as a result of an irreparable misidentification. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The danger of allowing improper identifications of a criminal defendant is, obviously enough, that innocent persons might be convicted. See Macias v. State, 673 So.2d 176, (Fla. 4th DCA), review denied, 680 So.2d 423 (Fla. 1996). It is for that reason that impermissibly suggestive identification procedures that might lead *749 to an irreparable misidentification breaches a criminal defendant's right to a fair trial in violation of that person's right to due process.
There is, however, no per se rule associated with an in-court identification that is tainted with faulty or suggestive out-of-court identification procedures. Manson. Essentially, when faced with this circumstance a court is charged with the responsibility of determining whether under the "totality of circumstances" there is a substantial likelihood of irreparable misidentification. See Johnson v. State, 717 So.2d 1057 (Fla. 1st DCA 1998).
In Neil, 409 U.S. at 199-200, 93 S.Ct. 375, the United States Supreme Court articulated the factors making up the "totality of circumstances" that a trial court should consider in assessing the reliability of an identification obtained by suggestive procedures. These include the opportunity of the witness to view the criminal at the time of the crime; the degree of attention of the witness; the accuracy of the witness' prior description of the perpetrator; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. See also Edwards v. State, 538 So.2d 440 (Fla.1989). These factors have been applied by the courts of this state to evaluate impermissibly suggestive in-court identifications. See, e.g., Tumblin v. State, 747 So.2d 442, (Fla. 4th DCA 1999).
In the present case Jones learned about the improper "coaching" of Singh prior to his cross-examination of the witness, and therefore had the opportunities both to bring the impropriety to the attention of the jury, and to use the suggestion to attack the credibility of the witness. Indeed, it was the State that candidly brought this problem to the attention of Jones and the trial court. More importantly, the suggestion to the witness regarding the location of Jones in the courtroom, while improper, had some mitigating factors associated with it. Because Singh was hearing impaired and had limited ability to speak English, and because he had never been in a courtroom before, the State attempted to explain the trial process to him, and showed Singh where the jury, the judge, the testifying witness, the prosecution, the defendants and the spectators would sit during the trial. The trial court recognized in denying Jones' motion for mistrial that the State was trying to make the witness more comfortable with the setting, and was not suggesting where Jones would be located so that the witness could make an in-court identification.
In addition, the other facts surrounding the identification of Jones by Singh reflect that when applying the Biggers factors, the danger of misidentification was negligible. On the night of the incident, for example, Singh immediately recognized Jones as a former employee of an independent cleaning company the church had previously used, and accurately described Jones to the investigator. Singh was with Jones for approximately ninety minutes during which time he had ample opportunity to study Jones' features. Singh testified that while he did not really ever speak to Jones, he had worked in his presence on several occasions at the church, and immediately picked Jones out of a photo line-up on the night the incident occurred. Throughout his testimony, Singh unwaveringly insisted that Jones was one of the men that robbed him.
Finally, independent evidence existed that placed Jones at the crime scene. There was expert testimony that the footprints found at the crime scene matched the soles of Jones' sneakers. Both Singh and some employees of Lowes testified that they saw a green car leave the scene, and that Jones possessed a green car. The same white powdery substance from *750 the crime scene was later found in Singh's car after Jones was seen driving away with it. Items similar to those that were stolen were found in Jones' car and apartment.
Upon review of the totality of the circumstances, therefore, we have determined that sufficient evidence was presented to support the conclusion that Singh's in-court identification was based on his independent recollection from the time of the crime. Thus, Jones was not on this basis deprived of a fair trial. See Johnson, 717 So.2d at 1063.

THE KIDNAPING CHARGE
Jones asserts that the trial court erred when it denied his motion for judgment of acquittal concerning the kidnaping charge. He argues that because the movement of Singh from one room to another was incidental to and inherent in the robbery, it was not a distinct crime. Given the facts of this case, we do not agree.
A de novo standard of review is used when reviewing the denial of a motion for judgment of acquittal. See Sutton v. State, 834 So.2d 332 (Fla. 5th DCA 2003). In moving for a judgment of acquittal a defendant admits both the facts stated in the evidence and every reasonable conclusion favorable to the state that the trier of fact might fairly infer from the evidence. Lynch v. State, 293 So.2d 44 (Fla. 1974).
Jones was charged with kidnaping pursuant to Section 787.01(1)(a)(2), Fla. Stat., which provides:
The term `kidnaping' means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
* * *
(2) commit or facilitate commission of any felony.
In Faison v. State, 426 So.2d 963 (Fla.1983), the supreme court established a three-prong test to determine whether confinement of a person to facilitate another crime constitutes this variety of kidnaping as it is defined by the statute. See also Walker v. State, 604 So.2d 475 (Fla. 1992); Maxwell v. State, 803 So.2d 815 (Fla. 5th DCA 2001). First, the confinement of the victim must not be slight, inconsequential and merely incidental to the other crime. Second, the confinement must not be inherent in the nature of the other crime. Finally, the confinement must have some significance independent of the other crime in that it makes the other crime substantially easier to commit or it lessens the risk of detection. The confinement, thus, must be the kind that is not likely to naturally accompany the underlying felony. Berry v. State, 668 So.2d 967, (Fla.1996).
Here, viewing the evidence in the light most favorable to the State, the confinement was not slight, inconsequential or incidental to the other crimes. Jones initially moved Singh to the finance office without tying his hands or covering his face. Later, however, one of the accomplices tied Singh up and placed a white trash bag over his head. The confinement continued for ninety minutes until Singh finally escaped.
The binding of Singh also satisfies the second prong of Faison. See Berry, supra. The confinement was not of the sort inherent in the robbery because it was clearly unnecessary to bind and blindfold Singh in order to commit the robbery. That is to say, Jones would have been convicted of robbery even if he had not tied up Singh. Berry, 668 So.2d at 970.
Regarding the third prong, it is clear that tying Singh made the robbery substantially easier to commit and helped prevent the risk of detection. See Ferguson v. State, 533 So.2d 763, 764 (Fla.1988). Singh was bound for approximately ninety minutes of the two hours that the defendants *751 were in the church, and Jones frequently moved Singh from room to room.
Berry suggests that had the robbers confined the victims by simply holding them at gunpoint, or if the robbers had moved the victims to a different room, closed the door and ordered them not to come out, a kidnaping conviction could not stand. Berry, 668 So.2d at 969. Neither of these situations occurred in the present case. Because the State presented competent evidence from which a jury could conclude that Jones committed the crime of kidnaping, the trial court did not err when it denied Jones' motion for judgment of acquittal. Sutton, 834 So.2d at 334.
AFFIRMED.
THOMPSON, C.J., and ORFINGER, J., concur.